872

Everett G. RANK et al., Plaintiffs,

v.

(KRUG) United States of America et al.,
Defendants.

No. 685.

United States District Court
S. D. California, N. D.

Oct. 4, 1957.

See also 142 F.Supp. 1.

J. O. Reavis, Delano, Cal., and Irl Brett, Los Angeles, Cal., for defendant.

HALL, District Judge.

One of the defendants, the Southern San Joaquin Municipal Utility District, severing itself from the other defendants, has moved to alter and amend the Amended and Corrected Judgment entered June 21, 1957, in two particulars:

1:—To change the language in Paragraph 32 relating to the cost of construction of the plan of physical solution from "all costs * * * shall be bourne by the defendant United States of America and/or the defendant Districts," to the language used in Paragraph 25 of the Amended and Corrected Findings of Fact and Conclusions of Law relating to the costs of construction of the plan of physical solution which reads as follows: "all costs * * * shall be bourne by the defendant United States of America, provided, however, that the defendant Districts, or any of them, may advance said costs."

2:—To provide that the contract between the United States of America and the Southern San Joaquin Municipal Utility District for the furnishing of water is valid, and that the defendant District and its officers are entitled to recover costs, or, in the alternative, the

defendant District and its officers move for an order granting a new trial upon the issue of the validity of that water contract.

## I.

■ The alleged variance in Paragraph 32 of the Judgment from the language in Paragraph 25 of the Findings of Fact and Conclusions of Law concerning the payment of costs of construction of the plan of physical solution is not of such materiality as to require amendment of either the Findings or the Judgment.

## II.

Assuming that the issue of the validity of the contract is properly framed by the pleadings (a question which I do not decide), it was thought to be patent from the Opinion filed in this case that it is not necessary at this stage of the case to reach that question or make a determination of that issue in this case.

It is perfectly feasible that the Judgment made in this case, for injunction and for a physical solution, be enforced and that the contract between the defendant District and the United States of America be carried out.

■ The contract between the defendant District and the United States does not limit the United States to supply the water under the contract from the San Joaquin river, and it does not require the defendant District to accept only water from that river. The contract calls for the delivery to the District of "project" water, and defines "project" to "mean the Central Valley Project, California, of the Bureau of Reclamation." The Central Valley Project "includes 38 major storage reservoirs with an aggregate capacity of 30,269,000 acre feet." [Exhibit 136, page 119].

Since the commencement of the suit, the United States has completed as part of that "project" Pine Flat dam on the Kings river with a storage capacity of one million acre feet of water, which is accessible to the Friant-Kern canal. It has also completed Isabella reservoir on the Kern river, which is within the County and area of origin of the lands of the defendant District, and which reservoir has a capacity of more than 500,000 acre feet of water. The water to be supplied to the defendant District could be furnished by the United States from the reservoir back of either or both of said dams or from any of the other 38 major reservoirs in the "project," and still be within the terms of the contract.

The provision in the amended contract defining Class I water is merely a method of measuring the quantity of Class I water rather than limiting the United States to the San Joaquin river as the source of supply, or requiring the defendant District, on the other hand, to accept only water that is stored at Friant. If there were no other reasons (and there are) for such meaning the requirements of the Miller & Lux purchase and exchange contracts alone are sufficient to make that meaning clear. But even if that is not so, enforcement of the judgment as written in this case would still permit the water for defendant District's contract to be taken from the San Joaquin river, because of the small requirement of water to carry out the physical solution as ordered.

If the defendant District contends that its contract with the United States and the adjudication proceedings thereon in Kern County entitles the District to have the water called for in the contract come from the San Joaquin river, regardless of whether or not it is "surplus" water as that term is used and understood in the statutes and law of the State of California, then a serious question arises as to whether or not the Kern County court proceedings "in rem" and the statutes authorizing them are in conflict with the provisions of the California Constitution, Article 14, Section 3, West's Ann.Code, affirming riparian and appropriative rights to all water which is reasonably and beneficially used under reasonabe methods of diversion and use. The decision of that question is to be avoided by the Court, if at all possible; and the Judgment in this case eliminates the necessity for the decision of that

question. The Supreme Court in Arkansas Fuel Oil Co. v. Louisiana, 1938, 304 U.S. 197, 202, 58 S.Ct. 832, 834, 82 L.Ed. 1287, quoted the following with approval from Baker v. Grice, 1898, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748: "It is a matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions (of the validity of a State Act) until the necessity for such decision arises in the record before the court."

A decision on the question of the validity of the contract would also require a decision on the question of conflict between the statutes of the State of California establishing the procedures for the Kern County proceedings and the statutes relating to the rights to water of the areas and Counties of origin, as well as the provisions of California law relating to the appropriation of only surplus waters and those California statutes confirming, (as the Constitution does), riparian and appropriative rights so long as they are put to reasonable and beneficial uses by reasonable methods of diversion and use.

█ These questions concerning the construction of State statutes should, if possible, likewise be avoided by Federal courts unless absolutely necessary to a decision, and be left to a prior determination by the State courts. Leiter Minerals v. U. S., 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267; Rescue Army v. Municipal Court, 1947, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666; Stainbock v. Mo. Hock., 1949, 336 U.S. 368, 383-384, 69 S.Ct. 606, 93 L.Ed. 741; Alma Motor Co. v. Timken Detroit Axle Co., 1946, 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128; Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753; Albertson v. Millard, 1953, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983; Light v. U. S., 220 U.S. 523, 538, 31 S.Ct. 485, 55 L.Ed. 570; Spector Motor Service v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101. See Brandeis, J., concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688.

As pointed out, there is no necessity for determining any of those questions at this time.

One other matter should be mentioned: Following the Order of August 29, 1951, which was made with the consent of all parties [142 F.Supp. 6] directing the submission of plans of physical solution, extended hearing was had, participated in by all parties, after which the Court made the pre-trial order [142 F.Supp. 61 and 193] limiting the issues to be tried. The issue of the validity of the contract was not one of such issues, nor was the issue of the validity of the contract included as an issue to be determined, or suggested as such by any party, on the hearing of May 14, 1956, after notice to all parties for determination as to whether or not there should be an amended pre-trial order.

From the foregoing it is clear, and it is hereby ordered that the Motion of the defendant District to amend and alter the Judgment, or in the alternative to grant a new trial, should be, and the same is hereby denied.