Anthony HAYES, et al., Plaintiffs,

v.

OHIO DEPARTMENT OF PUBLIC WELFARE, et al., Defendants.

No. C–3–82–161.

United States District Court, S.D. Ohio, W.D.

Oct. 13, 1982.

John K. Kilcullen, Defiance, Ohio, G. Michael Kirkman, Dayton, Ohio, for plaintiffs.

William H. Wolff and Patrick Divine, Dayton, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; DEFENDANTS' MOTION TO STAY PROCEEDINGS SUSTAINED; DEFENDANTS' MOTIONS TO DISMISS AND TO JOIN PARTIES HELD NOT RIPE FOR DECISION AND NOT RULED UPON; PLAINTIFFS' MOTION FOR CLASS CERTIFICATION HELD NOT RIPE FOR DECISION AND NOT RULED UPON; INSTRUCTIONS TO PLAINTIFFS' COUNSEL

RICE, District Judge.

This action involves a federal constitutional challenge to an administrative decision by the Ohio Department of Public Welfare (ODPW) to deny certain public welfare benefits to persons allegedly receiving aid from programs run by the Ohio Department of Mental Health (ODMH) and the Ohio Department of Mental Retardation and Developmental Disabilities (ODMR/DD). A number of motions are currently pending before the Court. The Court, for the reasons stated below, finds Defendants' motion to stay the proceedings herein (Doc. # 11) to be well taken, and same is, therefore, sustained. The balance of the motions are considered not ripe for decision and need not be ruled upon.

I. *Procedural Background*

In their amended complaint (Doc. # 15), filed by leave of this Court, Plaintiffs Anthony Hayes, Marlene Simmons, and James D. Lewis are alleged to be "residents of group homes licensed by the [ODMH] who have been denied general relief solely because of their place of residence." Amended Complaint, ¶ 3. The aforementioned "group homes" are said to be licensed by the ODMH or the ODMR/DD, and denials of aid are alleged to be pursuant to Ohio Admin.Code § 5101:1–5–04 and Ohio Public Assistance Manual (PAM) § 323. ¶ 4. Named as Defendants are the ODPW, the Montgomery County Welfare Department (MCWD), Kenneth B. Creasy, Director of the ODPW, and Mary L. Harris, director of the MCWD. ¶¶ 5–8.

Plaintiffs Hayes and Simmons further allege that they are residents of the Day-Mont West Community Mental Health Center, a supervised residential program licensed by the ODMH. ¶ 9. All three plaintiffs are alleged to be entitled to benefits under the Ohio "Poor Relief" statutes, Ohio Rev.Code §§ 5113 *et seq.* Plaintiffs Hayes and Simmons applied for same, but were denied by the MCWD. ¶¶ 14–15. Plaintiff Lewis is, apparently, still receiving such benefits but "fears termination of his benefits." ¶ 16. Counsel for Plaintiffs allegedly sought administrative review of the denials,

but the requests were rejected by Defendant Creasy, who claimed that the Ohio Rev. Code § 5113.09 "gave him discretion to operate the [relief] program to exclude those persons who may be served by another agency." ¶ 18.

After recitation of factual allegations, Plaintiffs set forth four causes of action. First, they allege that the "regulatory exclusion of [persons with mental disabilities] from the [relief] program is baased (sic) upon their mental disabilities and the unverified presumption that they are incapable of independent living if they reside in a group home licensed by" the ODMH or ODMR/DD. ¶ 21. This classification, they contend, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

Second, Plaintiffs allege that as "residents of licensed group homes, plaintiffs have been denied their statutory right to [relief]. Said classification is not based upon any facts that would show plaintiffs are not living in an independent manner as defined by Ohio Revised Code § 5113.03 or that they are otherwise not entitled to benefits." ¶ 23. This classification is also said to violate the Equal Protection Clause.

Third, Plaintiffs allege that by promulgating PAM § 323 and Ohio Admin.Code § 5101:1–5–04, "defendants OPDW and Creasy have acted in a manner that is arbitrary and capricious, the effect of which is to deny plaintiffs public benefits to which they are entitled [and preventing them from showing] the factual basis for their entitlement to" relief. ¶ 25. These acts are alleged to violate the Due Process Clause of the Fourteenth Amendment to the Constitution.

Finally, Plaintiffs allege that Defendants ODPW and Creasy have denied them relief benefits to which they are entitled under state law. ¶¶ 27–28.

In their prayer for relief, Plaintiffs request that this Court certify a class, pursuant to Fed.R.Civ.P. 23, declare the aforementioned regulations unconstitutional, and order Defendants to accept Plaintiffs' applications for general relief.

Several motions are currently pending in this matter, to wit:

1. a motion to dismiss by Defendants MCWD and Harris (Doc. # 8);

2. a motion to dismiss or stay these proceedings, by Defendants ODPW and Creasy (Doc. # 11);

3. a motion by Defendants ODPW and Creasy to join ODMH and ODMR/DD as party defendants, pursuant to Fed. R.Civ.P. 19 (Doc. # 12); and

4. Plaintiffs' Motion for Class certification (Doc. # 20).

As the numerous memoranda filed by counsel demonstrate, Plaintiffs, and Defendants ODPW and Creasy, have staked out quite different interpretations of the aforementioned statutes and regulations. The relevant statutory provision states that:

Poor relief shall be given on a budgetary basis and shall be sufficient to maintain health and decency, taking into account the requirements and the income resources of the recipient, the receipt of other forms of public assistance shall not prevent the receipt of poor relief if additional need exists.

Ohio Rev.Code § 5113.03. The statute also grants the ODPW authority to make "reasonable rules for the effective administration of poor relief." Ohio Rev.Code § 5113.09(A). One of those regulations, at issue herein, provides that:

Individuals/families must reside in an independent living arrangement of their own choosing (with freedom of movement), and must not be residents in a public institution. Persons residing in Ohio Department of Mental Health and Mental Retardation licensed or supervised homes do not qualify for relief.

Ohio Adm.Code § 5101:1–5–04. As noted above, Plaintiffs were denied relief on the basis of the latter regulation.

Essentially, Defendants ODPW and Creasy argue that the aforementioned regulation is fully supported by the language of the relevant statute, in that "poor relief for

persons otherwise maintained by the state" is not justified. Defendants' Motion to Dismiss or to Stay the Proceedings, Doc. # 11, p. 2. In particular, Defendants contend that the regulation is an "expansion" of the last sentence of Ohio Rev.Code § 5113.01, which states that "Poor relief may be given to persons living in their own homes or other suitable quarters, but not to persons living in a county home . . . ." Historically, Defendants argue, persons such as Plaintiffs "were within the protective web of ODMH and ODMR/DD statutory provisions." But "recent developments in the deinstitutionalization programs of ODMH and ODMR/DD have created cracks in this protective web," throwing the proper interpretation of the aforementioned statutes and regulations into some doubt, with regard to which agency is responsible for individuals such as Plaintiffs. *Id.* at 7–8. *See also,* Defendants' Reply Memorandum, Doc. # 19, pp. 2–4. In short, Defendants argue that the proper interpretation of those various statutes and regulations is a matter of some confusion, although they contend that the regulation is nonetheless valid.

In sharp contrast, Plaintiffs argue that the invalidity of Ohio Adm.Code § 5101:1–5–04 is clear from the face of the relevant statutes. They contend that, based on the statute, only persons *involuntarily* committed to state institutions are eligible to receive aid from the ODMH or ODMR/DD. Since Plaintiffs clearly do not fall into such a class, they conclude, Defendants' arguments are incorrect, and they are entitled to relief from the ODPW. Plaintiffs' Memorandum Contra, Doc. # 17, pp. 8–9. *See also,* Plaintiffs' Memorandum in Opposition to State Defendants' Motion to Join Party Defendants, Doc. # 16.

Having briefly outlined the respective positions of the parties, the Court now turns to Defendants' motion to stay these proceedings on abstention grounds, which motion, if sustained, would obviate the necessity to dispose of the other pending motions.

## II. *Abstention*

Defendants argue that the doctrine of abstention is applicable to this case, and mandates that this Court stay the proceedings herein pending Plaintiffs' resort to state court adjudication. They refer to both the *Pullman* abstention doctrine, *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and the *Burford* abstention doctrine, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Under the former theory, abstention is appropriate if a federal constitutional issue, as herein, might be mooted or presented in a different posture by a state court determination of pertinent state law. Under the latter doctrine, abstention is appropriate if the exercise of federal review in a difficult area of state law would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See, Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813–15, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Hanna v. Toner,* 630 F.2d 442, 445 (6th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981); *Reynolds v. City of Dayton,* 533 F.Supp. 136, 140–43 (S.D.Ohio 1982).

This Court agrees with Plaintiffs that *Burford* abstention is not applicable to this case, though not for the reasons suggested by them. Plaintiffs argue that *Burford* is not on point, since "services to persons with mental disabilities have long become federal objectives" and "expertise and experience in enforcing the civil rights of mentally ill and mentally retarded individuals is found most exclusively in the Federal Court system." Plaintiffs' Memorandum in Opposition to State Defendants' Motion to Dismiss, Doc. # 17, pp. 5–6 (citing, *inter alia, Youngberg v. Romeo,* —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), a case involving a Due Process challenge to the conditions of confinement of a mentally retarded individual involuntarily committed to a state institution).

Such broad reasoning, even if correct, is unnecessary to determine whether *Burford*

abstention applies herein. Instead, the Court finds that it is not dealing "with any complex state scheme for allocation of property rights as to which the federal courts might lack expertise." *Hanna v. Toner, supra,* 630 F.2d at 446. Certainly, federal courts have adjudicated the federal rights of mentally ill individuals. *E.g., Youngberg v. Romeo, supra. Cf. Mills v. Rogers,* —— U.S. ——, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) (case involving rights of involuntarily committed mental patient remanded for consideration of intervening state court decision and whether "abstention now is appropriate.") And while the state law issues in this case are not entirely clear, as noted above, no "complex state scheme" is involved, dealing with allocation of property rights or other rights "of substantial public concern" to the citizens of Ohio. For these reasons, the Court finds that *Burford* abstention is not applicable to the within matter.

On the other hand, the Court does agree with Defendants that *Pullman* abstention controls this case. As outlined above, Plaintiffs argue that the regulations promulgated by the ODPW flatly contradict the applicable Ohio statutes. These regulations, they contend, also violate their federal equal protection and due process rights. However, if Plaintiffs are correct on their state law claim, it would seem unnecessary to reach the federal questions. Thus, a classic case for *Pullman* abstention is presented.

Plaintiffs advance two grounds in arguing that this is not the correct result. First, they correctly observe that *Pullman* abstention is unnecessary if the state law is not ambiguous or unclear, or if said law has been previously interpreted by state courts. *Colorado River Water Conservation Dist., supra,* 424 U.S. at 815, 96 S.Ct. at 1245; *Zablocki v. Redhail,* 434 U.S. 374, 379–80 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978). As noted above, Plaintiffs argue that there is no ambiguity in the aforementioned statutes. The Court cannot agree. A careful reading of the applicable statutes, particularly Ohio Rev.Code §§ 5113.01 & 5113.03, simply does not invariably indicate

that Plaintiffs are entitled to relief from the ODPW. In other words, the Court cannot find that Ohio Admin.Code § 5101.1–5–04, the regulation under attack, is unambiguously in conflict with the pertinent statutes. Moreover, the Court is unaware of any Ohio court decisions which have interpreted said statutes or regulations, in a manner pertinent to this litigation. Nor have the parties cited any such case law.

Second, Plaintiffs also correctly argue that potential delays in deferring to state court proceedings can weigh in favor of declining to abstain on *Pullman* grounds, particularly where important federal rights are involved. *See, e.g., Belotti v. Baird,* 428 U.S. 132, 147–50, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) (abortion rights); *Anderson v. Mills,* 664 F.2d 600, 603–04 (6th Cir.1981) (voting rights); *Kay v. Austin,* 621 F.2d 809, 812 (6th Cir.1980) (voting rights). In the within case, Plaintiffs argue that "a minimum of one to two years can be expected in order to bring the case just to the jurisdictional threshold of the Ohio Supreme Court. For persons seeking the meagre (sic) sum available through [relief] as their sole source of income, the delay is profound." Plaintiffs' Memorandum in Opposition to State Defendants' Motion to Dismiss, doc. # 17, p. 9. While the Court is sympathetic to Plaintiffs' financial plight, the alleged infringement of their federal constitutional rights does not rise to the level of abortion or voting rights, which can be lost if not expeditiously vindicated. Nor are "civil rights" in general an exception to the abstention doctrine. *Lewellyn v. Gerhardt,* 513 F.2d 184, 187 (7th Cir.1975); 1A, pt. 2 Moore's *Federal Practice,* ¶ 0.203[1] at 2113–14 (2d ed. 1982).

In addition, resort to Ohio courts should not result in undue delays in adjudicating Plaintiffs' rights under state law. Unfortunately, the parties did not expressly brief this point. It appears that Plaintiffs could not bring suit against the ODPW under the Ohio Administrative Procedure Act, Ohio Rev.Code § 119 *et seq.,* since the ODPW is not considered an "agency" for purposes of that Act. *See, Bolin v. White,* 51 Ohio

App.2d 92, 367 N.E.2d 63 (Franklin Cty. 1976); *Shady Acres Nursing Home, Inc. v. Canary,* 39 Ohio App.2d 47, 316 N.E.2d 481 (Franklin Cty.1973); *Lehew v. Rhodes,* 23 Ohio App.2d 102, 261 N.E.2d 280 (Franklin Cty.1970). However, Plaintiffs *could* sue the ODPW under the Ohio Declaratory Judgment Act, Ohio Rev.Code § 2721.03. *See, e.g., Padgett v. Ohio Dep't of Public Welfare,* 65 Ohio App.2d 96, 416 N.E.2d 639 (Lucas Cty.1979). Under the latter Act, plaintiffs can sue a state agency on the grounds that regulations promulgated by same are inconsistent with the statute, as Plaintiffs herein contend. *See, e.g., Sterling Drug, Inc. v. Wickham,* 63 Ohio St.2d 16, 406 N.E.2d 1363 (1980). Thus, it appears that Ohio courts are open to hear Plaintiffs' state law claims, and the Defendants do not contend otherwise.

For the above stated reasons, the Court finds that abstention, based on the *Pullman* doctrine, is appropriate in this case, so that ruling on the potentially difficult federal claims raised by Plaintiffs may be rendered unnecessary. *Cf. Schweiker v. Wilson,* 450 U.S. 221, 229, 231 & n. 13, 101 S.Ct. 1074, 1079, 1081 & n. 13, 67 L.Ed.2d 186 (1981) (noting but not reaching the issue of what standard of equal protection should apply to the "mentally ill" as a discrete group). In invoking said doctrine, Plaintiffs will be required to hereafter pursue adjudication in Ohio state courts, since the pendency of a *current* state proceeding is unnecessary to apply the doctrine. *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 513, 92 S.Ct. 1749, 1758, 32 L.Ed.2d 257 (1972); *Muskegon Theatres, Inc. v. Muskegon,* 507 F.2d 199, 202 (6th Cir.1974). As is customary, the Court will stay the instant proceedings, and retain jurisdiction until if and when Plaintiffs' federal claims need to be adjudicated. *Lake Carriers' Ass'n, supra.*

III. *Conclusion*

Having found that abstention is proper in this case, the Court hereby affirms that portion of Defendants' motion (Doc. # 11) seeking a stay of these proceedings. The balance of said motion is not ruled upon.

In addition, the balance of the pending motions on record are held not ripe for decision, and are not ruled upon, since the invocation of abstention may make it unnecessary to further adjudicate this case in federal court. *See, Hernandez v. Finley,* 471 F.Supp. 516, 521 (N.D.Ill.1978) (abstention issue should be reached before class certification or other issues).

Plaintiffs' counsel is directed to notify this Court, at ninety day intervals, as to the progress of any state court litigation in order that this Court might determine when, if ever, this case may become viable once again.